# EXHIBIT O



March 8, 2018

**Via E-Mail (*peter.mastrostefano@puma.com*)**

Peter Mastrostefano
SVP, General Counsel
Puma North America, Inc.
10 Lyberty Way
Westford, Massachusetts 01886

      **Re:**    **NIKE's U.S. Patent Nos. 6,973,746; 7,401,420; 7,637,032; 8,266,749; 9,078,488; 9,314,065; and 9,375,046**

Dear Pete:

    We write in response to your letter of February 15, 2018, which you misdated February 10, 2018. Your letter responded to our letter of October 24, 2017, regarding PUMA's infringement of U.S. Patent Nos. 9,078,488 (the '488 patent) and 9,375,046 (the '046 patent).

    You state in your letter that PUMA respects NIKE's intellectual property, but PUMA's actions over the past two years suggest otherwise. We first wrote to PUMA in December of 2016, requesting that PUMA stop infringing NIKE's U.S. Patent Nos. 6,973,746 (the '746 patent) and 7,637,032 (the '032 patent). PUMA has not stopped those infringements. We again wrote to PUMA in October of 2017, requesting that PUMA stop infringing two additional NIKE patents – *i.e.*, the '488 and '046 patents. PUMA did not substantively respond until nearly four months later, and PUMA has not stopped its infringements. We have also recently discovered that PUMA is infringing at least three additional NIKE patents – *i.e.*, U.S. Patent Nos. 7,401,420; 8,266,749; and 9,314,065 – which we address in more detail in this letter. This record suggests PUMA is not respecting NIKE's intellectual property, but rather PUMA is intentionally copying NIKE's intellectual property.

    We disagree with PUMA's non-infringement arguments for the '488 patent that you set forth in your February 15 letter. PUMA concedes certain portions of the IGNITE Speed Netfit have different visual effects when viewed from different viewing angles, but PUMA incorrectly argues those different visual effects are caused by different yarns in the "base portion," not the "lenticular knit structure" portion. PUMA premises its arguments on incorrect constructions of the "base portion" and "lenticular knit structure" limitations of the claims. The intrinsic record for the '488 patent does not support

Puma North America, Inc.
March 8, 2018
Page 2

PUMA's overly narrow reading of those claim limitations. Under a proper construction of the claim limitations, the portion of the IGNITE Speed Netfit that you refer to as the "base portion" is not the "base portion," but rather it is a portion of the "lenticular knit structure." Thus, PUMA's IGNITE Speed Netfit shoes infringe claims of the '488 patent.

We also disagree with PUMA's non-infringement arguments for the '046 patent that you set forth in your February 15 letter. PUMA again premises its arguments on incorrect, and overly narrow, claim constructions. For example, PUMA incorrectly argues it does not infringe because the IGNITE Speed Netfit does not have "tubular structures" that are hollow. The intrinsic record for the '046 patent, however, does not support reading a "hollow" limitation into the claims, at least not in the way that PUMA suggests. For example, the specification of the '046 patent explains that "rib structures may include additional components that are disposed within the tubes." ('046 patent, at 4:61-63.) The specification further provides, for example, that in some embodiments, "a tensile element may be inlaid within the unsecured central area of one or more tubular rib structures." ('046 patent, at 20:57-60.) The claims of the '046 patent cover those embodiments and, as you represent in your letter, PUMA's IGNITE Speed Netfit is constructed in accordance with those embodiments. You state in your letter the "'ribs' as represented in the PUMA product are always completely filled with textile material." Thus, PUMA's IGNITE Speed Netfit infringes claims of the '046 patent.

As noted above, we are also writing to you today pursuant to 35 U.S.C. § 287 to notify you that PUMA is offering to sell and selling shoes that NIKE believes infringe claims of additional NIKE patents, including at least U.S. Patent Nos. 7,401,420 (the "'420 patent"); 8,266,749 (the "'749 patent"); and 9,314,065 (the "'065 patent"). NIKE believes PUMA is importing into the United States, or offering to sell and selling within the United States, footwear products made by the process of at least claim 1 of the '749 patent, including at least Puma's IGNITE Proknit, IGNITE Speed Netfit, Mostro Bubble Knit, Jamming, and possibly others (the "Infringing Knit Products"). The Infringing Knit Products appear to be manufactured using a method comprising: simultaneously knitting a textile element with a surrounding textile structure, the knitted textile element having at least one knitted texture that differs from a knitted texture in the surrounding knitted textile structure; removing the knitted textile element from the surrounding knitted textile structure; incorporating the knitted textile element into the article of footwear. We have reproduced images of the Infringing Knit Products below.



**IGNITE Proknit**



**IGNITE Speed Netfit**

Puma North America, Inc.
March 8, 2018
Page 3



**Mostro Bubble Knit**



**Jamming**

PUMA also infringes claims of the '420 patent by offering to sell and/or selling its Jamming footwear in the United States. For example, PUMA infringes at least claim 14 of the '420 patent because the Jamming is an article of footwear comprising: a sole structure incorporating a fluid-filled bladder and a reinforcing structure secured to the bladder, the sole structure having an upper surface and an opposite lower surface, the upper surface forming a ridge that defines a first portion of a lasting surface, at least a portion of the ridge being an inclined surface formed by the reinforcing structure and located over the bladder, the bladder defining a second portion of the lasting surface; and an upper secured directly to the first portion of the lasting surface and the second portion of the lasting surface.

PUMA also infringes claims of the '065 patent by offering to sell and/or selling its Future 18.1 Netfit FG/AG Soccer Cleats in the United States. For example, PUMA infringes at least claim 1 of the '065 patent. Below we have reproduced Figure 5 of the '065 patent and an image of a Future 18.1 Netfit FG/AG Soccer Cleat.



FIG.5

Puma North America, Inc.
March 8, 2018
Page 4



**Future 18.1 Netfit FG/AG Soccer Cleat**

As can be seen above, PUMA's Future 18.1 Netfit FG/AG Soccer Cleat is an article of footwear comprising: a base plate including a forefoot region, a heel region, a midfoot portion disposed between the forefoot region and the heel region, a longitudinal axis extending through the forefoot region and heel region, a forward edge, a rearward edge, a medial edge, and a lateral edge; a structure disposed on the base plate, the structure including a medial forefoot pad disposed on the forefoot region proximate the midfoot portion and the medial edge, a lateral forefoot pad disposed on the forefoot region proximate the midfoot portion and the lateral edge, a medial heel pad disposed on the heel region proximate the medial edge, a first lateral heel pad disposed on the heel region proximate the lateral edge, a first diagonal rib extending from the medial forefoot pad to the first lateral heel pad, a second diagonal rib extending from the lateral forefoot pad to the medial heel pad, a medial midfoot bar substantially parallel to the longitudinal axis and disposed proximate the medial edge, and a lateral midfoot bar substantially parallel to the longitudinal axis and disposed proximate the lateral edge; a medial forefoot stud disposed on the medial forefoot pad; a medial heel stud disposed on the medial heel pad; a first lateral forefoot stud disposed on the lateral forefoot pad; and a first lateral heel stud disposed on the first lateral heel pad; the first diagonal rib having a first lateral edge intersecting with the first lateral heel pad; the second diagonal rib having a second lateral edge intersecting with the first lateral forefoot pad; the lateral midfoot bar having a third lateral edge; wherein the medial midfoot bar extends from a first point on the first diagonal rib to a second point on the second diagonal rib; and wherein the third lateral edge of the lateral midfoot bar intersects with, and terminates at, a third point on the second diagonal rib at a forward end of the lateral midfoot bar; wherein the third lateral edge of the lateral midfoot bar intersects with, and terminates at, a fourth point on the first diagonal rib at a rearward end of the lateral midfoot bar; wherein the third point is spaced from the lateral forefoot pad; and wherein the fourth point is spaced from the first lateral heel pad.

PUMA's continued unauthorized use of inventions covered by claims of the '746, '420, '032, '749, '488, '046, and '065 patents constitutes willful patent infringement. As we noted in my previous letters, NIKE's preference is to avoid

Puma North America, Inc.
March 8, 2018
Page 5

litigation and amicably resolve disputes.  But NIKE cannot permit PUMA to continue violating NIKE's intellectual property rights.  To resolve this dispute, please immediately confirm that PUMA will cease all manufacturing, use, sales, offers to sell, and importation into the United States of the IGNITE Proknit, the IGNITE Speed Netfit, the Mostro Bubble Knit, the Jamming, the evoSPEED SL footwear, and the Future 18.1 Netfit FG/AG Soccer Cleats.

This letter addresses PUMA's infringement of the specific intellectual property rights described above.  As you know, NIKE owns many other valuable intellectual property rights.  NIKE reserves all rights and remedies it may have against PUMA.

Very truly yours,

Brian Fogarty
VP, Global IP Litigation & Brand Protection