UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| NIKE, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 18-10876-LTS |
| PUMA NORTH AMERICA, INC., | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 24)

October 10, 2018

SOROKIN, J.

In this lawsuit, Nike, Inc. ("Nike") alleges that Puma North America, Inc. ("Puma") is infringing seven of Nike's patents related to various types of footwear. Puma has moved for dismissal of: 1) the claims alleging infringement of two specific patents, which, Puma argues, are not directed to patentable subject matter; and 2) the allegations of willful infringement of all seven patents. Nike has opposed the motion, which is now fully briefed and ripe for resolution.[1] For the reasons that follow, Puma's motion (Doc. No. 24) is DENIED.

I.   BACKGROUND

   A.   U.S. Patent No. 8,266,749 ("the '749 patent'")

The '749 patent is assigned to Nike and is entitled "Article of Footwear Having a Textile Upper." Doc. No. 1-2 at 2.[2] According to the abstract, it discloses "[a]n article of footwear and

---

[1] Puma's request for oral argument is DENIED. The motion has been the subject of substantial briefing, and the Court finds further argument by the parties is unnecessary.
[2] Citations to documents on the Court's electronic docket reference the assigned document number and the page number from the ECF header.

a method of manufacturing the article of footwear." Id.; see also id. at 16 ("The invention concerns . . . an article of footwear incorporating an upper that is at least partially formed from a textile material."). As a representative independent claim of the '749 patent, the parties point to Claim 1, which discloses:

> A method of manufacturing an article of footwear, the method comprising:
>
> simultaneously knitting a textile element with a surrounding textile structure, the knitted textile element having at least one knitted texture that differs from a knitted texture in the surrounding knitted textile structure;
>
> removing the knitted textile element from the surrounding knitted textile structure;
>
> incorporating the knitted textile element into the article of footwear.

Id. at 21. Each subsequent claim also relates to a method of manufacturing an article of footwear. Id. at 21-22.

According to Nike, this patent and three others involved in this suit relate to its "Flyknit technology." Doc. No. 1 ¶ 27. Nike alleges that it endeavored to eliminate "certain inefficiencies" inherent in "[t]he conventional way of making uppers" for footwear by inventing "novel and non-obvious ways to form uppers from a single knitted material while still providing different textures or properties to different areas of the uppers." Id. ¶¶ 14-16; see Doc. No. 1-2 at 20 ("In contrast with the conventional upper, . . . [a] first texture and second texture are incorporated into a single, unitary element of textile, rather than two separate elements that are stitched or otherwise joined together."). The Flyknit technology, Nike avers, was "lauded" as having "revolutionized the age-old craft of shoemaking" and as representing a "quantum leap in the industry." Doc. No. 1 ¶ 20 (quotation marks omitted).

    B.    U.S. Patent No. 9,078,488 ("the '488 patent'")

Also assigned to Nike, the '488 patent is entitled "Article of Footwear Incorporating a Lenticular Knit Structure." Doc. No. 1-3 at 2. The abstract describes "[a]n article of footwear

including an upper incorporating a knitted component having color-shifting properties," wherein "lenticular knit structures are formed of unitary knit construction with the remaining portions of the knitted component," and "different yarns . . . generate a visual effect that changes the color of the article of footwear depending on the viewing angle." Id.; see also id. at 27 ("The present invention relates generally to articles of footwear, and, in particular, to articles of footwear incorporating knitted components."). Claim 1 of the '488 patent provides a representative independent claim:

> An article of footwear including an upper and a sole structure attached to the upper, the upper incorporating a knitted component formed of unitary knit construction, the knitted component comprising:
>
> at least one lenticular knit structure including a first portion and a second portion disposed on opposite sides of the lenticular knit structure; and
>
> a base portion disposed adjacent to the at least one lenticular knit structure;
>
> wherein the at least one lenticular knit structure extends away from the base portion on an exterior surface of the upper; and
>
> wherein the first portion of the at least one lenticular knit structure is associated with a first visual effect when the upper is viewed from a first viewing angle and the second portion of the at least one lenticular knit structure is associated with a second visual effect when the upper is viewed from a second viewing angle that is different than the first viewing angle.

Id. at 39. Claims 2 through 9 of the '488 patent also disclose "article[s] of footwear," claims 10 through 15 disclose "knitted component[s] for incorporating into an article," and claims 16 through 20 disclose "method[s] of manufacturing a knitted component for incorporating into an article." Id. at 39-40.

The '488 patent also relates to Nike's Flyknit technology, Doc. No. 1 ¶ 27, and involves the same alleged innovations to manufacturing uppers described above, id. ¶¶ 14-16, 20. See also Doc. No. 1-3 at 27 (explaining that "decreasing the number of material elements" reduces "waste . . . while increasing the manufacturing efficiency and recyclability of the upper").

3

C. <u>Willfulness Allegations</u>

Nike alleges it "notified Puma on multiple occasions that [Puma] infringes [Nike's] Flyknit Patents" with "certain of [Puma's] knitted footwear," that it "asked Puma to stop infringing its Flyknit Patents," and that Puma continued to infringe. Doc. No. 1 ¶¶ 42-44. Nike makes essentially the same assertions with respect to the patent-in-suit involving its "Air technology." <u>Id.</u> ¶¶ 65-67. Regarding two other patents directed to soccer cleat assembly, Nike echoes its assertions of notice and continued infringement, but also alleges Puma introduced a new allegedly infringing product after receiving notice of infringement. <u>Id.</u> ¶¶ 84-86.

In each of the seven counts alleging patent infringement, Nike asserts "[o]n information and belief" that "Puma's infringement has been willful, intentional, and deliberate," contending "Puma knew or should have known that making, using, offering to sell, selling, and/or importing" the accused product(s) "would directly infringe" the relevant patent, "yet Puma infringed and continues to infringe." Doc. No. 1 ¶¶ 92, 100, 107, 114, 121, 128, 135.

II. <u>DISMISSAL STANDARD</u>

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint "must provide fair notice to the defendants and state a facially plausible legal claim." <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011). In other words, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

"Though the usual basis for a 12(b)(6) motion is the plaintiff's failure to plead sufficient facts in its complaint, a motion to dismiss 'may sometimes be premised on the inevitable success of an affirmative defense,'" such as patent invalidity. Oxford Immunotec Ltd. v. Qiagen, Inc., No. 15-cv-13124, 2016 WL 5746639, at *3 (D. Mass. Aug. 31, 2016) (quoting Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)). A defendant seeking dismissal on that basis must establish that "the only plausible reading of the patent is one that demonstrates that the patent claims cover subject matter that is not eligible for patenting." Id. (quoting Ultramercial, Inc. v. Hulu, LLC, 722 F.3d 1335, 1339 (Fed. Cir. 2013), and OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1349, 1364 (Fed. Cir. 2015)).

III. DISCUSSION

    A. Patentability

Puma contends that Nike's claims alleging infringement of the '749 and '488 patents should be dismissed because both patents are directed to "abstract ideas" and lack "inventive concepts." Doc. No. 25 at 9-15. In particular, Puma characterizes the '749 patent as "directed to the abstract idea of forming an outline pattern on a textile" and argues it merely "describes the use of prior-art mechanical processes for manufacturing textiles by traditionally-known techniques." Id. at 11. The '488 patent, Puma urges, is "directed to the abstract idea of generating a visual pattern on a textile" which is "nothing more than a" non-patentable "work of art." Id. at 13-14. Nike disagrees, urging that the claims in both patents are presumed valid and that Puma has not carried its "burden of proving them patent-ineligible by clear and convincing evidence." Doc. No. 26 at 5. Per Nike, both patents are directed to "tangible and concrete

5

articles of manufacture"—shoes—and both describe "novel improvements over the prior art." Id. at 5-6.

For reasons Judge Saylor has explained, this Court will presume that the claims of the '749 and '488 patents are valid and describe patentable subject matter, and will require Puma to provide clear and convincing evidence otherwise to support its assertion of ineligibility. See DataTern, Inc. v. Microstrategy, Inc., No. 11-cv-11970, 2015 WL 5190715, at *7-8 (D. Mass. Sept. 4, 2015) (discussing Microsoft Corp. v. i4i Limited Partnership, 564 U.S. 91 (2011), the concurrence in Ultramercial, 772 F.3d at 720-21, and this Court's obligation to apply "existing law" rather than an "exception" urged by one Federal Circuit judge but never explicitly endorsed by any majority opinion of the Federal Circuit or the Supreme Court).[3]

The Supreme Court has "created a two-step inquiry for determining when an invention has patentable subject matter." Oxford Immunotec, 2016 WL 5746639, at *3. Pursuant to that test, courts first ask whether the relevant patent claims are directed to "one of the four statutorily provided categories of patent-eligible subject matter" (i.e., "processes, machines, manufactures, [or] compositions of matter"), or to a "patent-ineligible concept" such as an abstract idea. Ultramercial, 772 F.3d at 713-14 (citing 35 U.S.C. § 101 and Alice Corp. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014)); accord Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66 (2012); see Diamond v. Diehr, 450 U.S. 175, 185 (1981) (explaining patent protection does not extend to "laws of nature, natural phenomena, [or] abstract ideas"). If the former, "the claims pass muster under § 101." Ultramercial, 772 F.3d at 714. If the latter, courts consider whether

---

[3] Puma cites no decision of any federal court outside the Ninth Circuit which post-dates DataTern and reaches a contrary conclusion or otherwise calls Judge Saylor's thoughtful analysis into question. Puma complains that Nike has taken different positions regarding the applicability of the presumption to questions of eligibility when litigating in different federal courts, but the Court will not disregard persuasive law from this District on that basis.

the claims include an "inventive concept"—"an element or combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law [or abstract concept] itself." Mayo, 566 U.S. at 72-73.

In this case, both patents Puma challenges explicitly relate to tangible manufactured items (footwear), physical components thereof (knitted uppers), or the processes for manufacturing such items or components. Although portions of the patents describe visual effects or outline patterns, read as a whole, the claims plainly appear directed to patent-eligible subject matter: shoes. Moreover, even if the first step of the ineligibility test were satisfied, Nike has alleged an "inventive concept" sufficient to avoid dismissal at the second step of that test. Both the complaint and the patents themselves identify ways in which the inventions improved upon the conventional methods of manufacturing shoes—in particular, by permitting more efficient construction of uppers using a unitary knitted component, thus reducing the number of materials needed and the amount of waste created. E.g., Doc. No. 1 ¶¶ 14-16, 20.

In sum, Puma simply has not offered clear and convincing evidence to overcome the presumption of eligibility and justify dismissal of the relevant claims at this early stage in the proceedings.

B.  Willfulness

Next, Puma argues that the complaint does not contain sufficient facts to suggest its conduct was egregious, justifying dismissal of Nike's assertions of willful infringement. Doc. No. 25 at 16-19. This argument rests on Puma's view that the law requires a plaintiff to allege more than knowledge of the patent and continued infringement in order to plead a claim of willful infringement. Id. Nike responds by citing a decision by another session of this Court in which knowledge of the patent and infringement were deemed sufficient to permit a willful

7

infringement claim to survive a motion to dismiss.  See Doc. No. 26 at 6 (citing Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd., No. 16-cv-11458, 2017 WL 3795769, at *6 (D. Mass. Aug. 30, 2017)).  In addition, Nike points out that its complaint describes not only continued infringement by Puma, but also "escalation" of the infringement with the release by Puma of a new infringing product, in the face of repeated notices of Nike's patents.  Id.

There is some variation in how federal courts have approached the question of whether a complaint adequately pleads willful infringement in the wake of the Supreme Court's decision in Halo Electronics, Inc. v. Pulse Electronics, Inc., 136 S. Ct. 1923 (2016).  See Continental Circuits LLC v. Intel Corp., No. 16-cv-2026, 2017 WL 2651709, at *8 (D. Ariz. June 19, 2017) (describing post-Halo law on willfulness and pleading standards as "in a state of flux" and "unclear," citing cases which "universally—either in word or deed" have required facts to be pled showing willfulness, but noting divergent approaches to the "uncertain" question of "the quantum of culpability that a plaintiff must plead").  The sessions of this Court to consider the question, however, have not required plaintiffs "to allege more than knowledge of the patent and of infringement."  Lexington Luminance, 2017 WL 3795769, at *6; accord Sunrise Techs., Inc. v. Cimcon Lighting, Inc., 219 F. Supp. 3d 260, 265 (D. Mass. 2016); see Simplivity Corp. v. Springpath, Inc., No. 15-cv-13345, 2016 WL 5388951, at *18 (D. Mass. July 15, 2016) (finding sufficient allegations that defendant had continued infringing despite having reason to know that "litigation was afoot" and, thus, that its actions were "unreasonably risky"); cf. Continental Circuits, 2017 WL 2651709, at *8 (noting "some courts have found allegations of continued infringing activities sufficient to plead willfulness" in "situations involved existing patents, coupled with multiple instances of express notice of the alleged infringement").

8

Regardless whether the pleading standard is satisfied by allegations of knowledge and continued infringement or whether something more is required, this Court is satisfied that Nike has alleged facts sufficient to avoid dismissal of its willful infringement claims. Nike asserts it notified Puma that it believed Puma was infringing its patents on multiple occasions, that Puma continued marketing various accused products knowing of the patents and the accusations of infringement, and that Puma escalated its conduct by introducing a new infringing product notwithstanding Nike's notices. "Whether [Nike] can ultimately show that it is entitled to enhanced damages for [Puma's] egregious infringement behavior," and the impact of Puma's responses to Nike's notices on that assessment, are questions to be resolved later in the proceedings; such questions do not provide a basis for dismissing all or part of Nike's claims under Rule 12. Lexington Luminance, 2017 WL 2795769, at *6 (quotation marks omitted).

IV. CONCLUSION

For the foregoing reasons, Puma's motion to dismiss (Doc. No. 24) is DENIED. The Court will hold an initial scheduling conference in this matter on October 29, 2018 at 3:00 PM in Courtroom 13. A separate notice of that conference will issue forthwith.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge